**KUT, Plaintiff-Appellee, v. ALBERS SUPER MARKETS, Inc., et al., Defendants-Appellees.**

Ohio Appeals, First District, Hamilton County.

No. 6495.   Decided June 4, 1945.

Paxton & Seasongood, Cincinnati, for plaintiff-appellee.
Hugh S. Jenkins, Columbus, and John M. Woy, Columbus, for defendants-appellants.

## OPINION

By ROSS, J.

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton county, reversing an order of the Board of Review of the Bureau of Unemployment Compensation, denying the plaintiff unemployment compensation.

The facts admitted by plaintiff are that:

Max Kut was employed by Albers Super Markets, Inc., in June, 1943, as an order clerk with the understanding that he would be advanced to a higher job within a reasonable time. He continued as an order clerk until about November 15, 1943, at which time he was assigned to duty as a "checker" but without receiving the pay of a regular "checker." After receiving repeated promises that he would receive the wages of a regular checker, he was finally put on the payroll at such higher rate, but the union objected, on the ground that he was being promoted in advance of other employees who had acquired more seniority. Since the only work that Albers Super Markets, Inc. had to offer was to return him back as order clerk, at which he had started, the employer assumed that this would not be satisfactory to Kut and gave him his release, thus terminating his employment on March 7, 1944.

Kut is an orthodox Jew who has always followed the traditional tenets of his religious faith, one of which precludes working from sundown Friday evening to sundown Saturday evening. This period constitutes his Sabbath during which time labor is prohibited. While employed by Albers Super Markets, Inc., Kut had arranged to be off on his Sabbath and in lieu thereof worked Sunday afternoon and evening.

Kut was out of employment for about four weeks. On March 9, 1944, he was given a referral by the United States Employment Service to the Bardes Range and Foundry Company as a shipping clerk. Kut accepted this employment, but when the company learned that he could not work on Saturday, they refused to employ him. He was then given a referral to The H. J. Heinz Company as a shipping clerk, but this company also refused to hire him unless he was will-

ing to work on Saturday. Except for his Sabbath Kut was available for work at all others times of the week, both day and night. He remained unemployed until April 4, 1944, when he obtained a job with George H. Thomas, where he was not required to work on his Sabbath.

On or about March 24, 1944, Kut received a "Notice of Ineligibility" stating "Facts available establish that the claimant is not available for work on a Saturday. He is therefore not available for work within the meaning of §1345-6-a-(4) GC, and Par. 412 of the Rules and Regulations".

On April 5, 1944, Kut filed an appeal from the determination of the Administrator and a hearing was held before Edward J. Hayes, a referee for the Ohio Bureau of Unemployment Compensation. The referee handed down his decision on May 4, 1944, holding that Regulation 412 required Kut to be available for work each day of the week, including his traditional Sabbath, and that since he was not so available he was ineligible for benefits. The referee further held that this Regulation did not violate any statutory or constitutional rights of the claimant.

On May 9, Kut made application for permission to institute a further appeal before the Board of Review. His application was allowed and the appeal heard on June 21, 1944.

The Board of Review denied the plaintiff's application for unemployment compensation. Such order was made in conformity to the provisions of §1345-6a (4) GC:

"Each eligible individual shall receive benefits as compensation for loss of remuneration due to total or involuntary partial unemployment in the amounts and subject to the conditions stipulated in this act; but no benefits shall be paid for total or partial unemployment occurring prior to January 1, 1939.

"a. No individual shall be entitled to any benefits unless he or she
* * * *

"(4) is able to work and available for work in his usual trade or occupation, or in any other trade or occupation for which he is reasonably fitted; * *"

Sec. 1345-13 GC, provides:

"(a) In addition to all other duties imposed on the administrator and powers granted by the provisions of this act, the administrator shall have full power:

"(1) To adopt and enforce reasonable rules and regulations relative to the exercise of his powers and authority, * * *"

Board regulation No. 412 provides:

"TOTAL DISQUALIFICATION. An individual may not receive credit for waiting period week or benefits for any week in which he was not physically or mentally able to work, or in which he was not available for work. This means that he must be available each day of such week."

Sec. 1345-1-m GC, provides:

" 'Week' means the calendar week ending at midnight Saturday unless an equivalent week of seven consecutive calendar days is prescribed by the administrator."

This section is a part of an act as it became effective September 28, 1943. The same act was amended on May 14, 1941, and became effective October 1, 1941. (119 Ohio Laws, p. 827.) The language of paragraph "m" was as is in the present act. Previous to that in the act passed April 20, 1939, this paragraph "m" read:

"m. 'week' means such period or periods of seven consecutive calendar days as the administrator may by regulations prescribe."

Sec. 1345-5 GC, provides:

"No agreement by an employee to pay any portion of the contribution or other payment required to be made by his employer under this act, shall be valid; and no employer shall make a deduction for such purposes from the remuneration or salary of any individual in his employ. But nothing in this act shall affect the validity of voluntary arrangements by which employees individually or collectively agree to make contributions for the purpose of securing benefits in addition to those provided by this act."

Sec. 1345-2 GC, provided:

"(a) There is hereby created an unemployment compensation fund (hereinafter called the unemployment fund), to be administered by the state of Ohio, without liability on

the part of the state beyond the amounts paid into the fund and earned by the fund. This unemployment fund shall consist of all contributions collected under this act, together with any interest thereon collected pursuant to this act, all fines and penalties collected pursuant to the provisions of this act, all interest earned upon any moneys in the fund, any property or securities acquired through the use of moneys belonging to the fund, and all earnings of such property or securities. The unemployment fund shall be used to pay benefits and refunds as provided by this act and for no other purpose."

Under such facts and the law, the question presented is whether or not an employee may collect unemployment compensation, when he refuses to accept employment offered to him, because such employment requires him to work on Saturday, his sole reason for refusing such proferred employment being that the religion to which he adheres prohibits labor from "sundown Friday evening to sundown Saturday evening."

It is necessary to dispose of one contention of the plaintiff at once. Reliance is placed upon the provisions of §13045 GC, by plaintiff, his contention being that that section puts work on Saturday for those "persons who conscientiously observe the seventh day of the week as the Sabbath and abstain thereon from doing things herein prohibited on Sunday," in the same category as work on Sunday for other persons.

Such contention is untenable and this section in no way avails to aid in the disposition of the issue presented. In the first place it is evident that no person could be charged with any offense simply because he performed on Saturday any of the acts forbidden on Sunday, regardless of his religious belief. Sec. 13044 GC, and other sections in the Chapter on Sabbath desecration define crimes and provide punishment for certain acts performed upon Sunday. Sec 13045 GC, simply provides that persons holding certain religious beliefs shall not be amenable to the punishment provided for other persons who perform forbidden acts on Sunday. In so far as it does so, it is discrimination in favor of such persons holding such religious beliefs, and against those who do not hold such beliefs. The effects of these statutes is not to provide two days upon which labor is illegal. There is no reason why the plaintiff could not have accepted the proferred employment and still not have violated any law or statute. His sole reason was that his religious belief prevented his accepting such employment.

Plaintiff also places reliance upon **Art. 1, Sec. 7 of the Ohio Constitution.** Let us examine the provisions of this section in the light of the facts herein involved.

Nothing in the refusal to grant compensation to the plaintiff can be considered in any way an interference with his right to worship in any manner he sees fit or any interference with his rights of conscience. If he wishes to attend his church on Saturday that is his right. No one is attempting to interfere with that constitutional privilege. But what the plaintiff is saying is that, although my conscience will not permit me to work on Saturday, I should receive the same compensation as if it did not, and that if you refuse to give me such unemployment compensation, you are discriminating against me. In passing it will be noted that the section of the Constitution referred to also provides "and no preference shall be given by law to any religious society". Only by the employment of inverse logic can the plaintiff claim discrimination in the refusal to grant him unemployment compensation.

If the judgment of the Court of Common Pleas be sustained, certainly, there would be discrimination, but in favor of the plaintiff. All other persons except those holding conscientious scruples would be required to accept employment and be barred from such compensation if they did not. Certainly, this could be nothing less than discrimination against them.

The predicament of the plaintiff is not overlooked. He is bound by his conscience to refuse work on Saturday. If work on that day is offered, he feels he must refuse it. If he accepts the work, he, of course, will not be entitled to unemployment compensation. If he refuses the work, then he has denied his availability for it and disqualified himself for compensation.

His solution is to refuse the work and still claim unemployment compensation. This he cannot do, for he has rendered himself not available.

Nothing in Art. XIV, section 1 of the Constitution of the United States requires that unemployment compensation be given to one who refuses for any reason to work upon any day of the week, not excluded by law as a day of labor.

For these reasons, the judgment of the Court of Common Pleas is reversed and the order of the Board of Review is affirmed.

HILDEBRANT, P. J., MATTHEWS & ROSS, JJ., concur in syllabus, opinion & judgment.